UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| ROBERT JOHN LOW, et al., | ) | |
| Plaintiffs, | ) | Civil Action No. 09-72-ART |
| v. | ) | **MEMORANDUM OPINION &** |
| POWER TOOL SPECIALIST, INC., et al., | ) | **ORDER** |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Like ships passing in the night, two Kentucky Supreme Court decisions have, without acknowledgment, taken competing positions on the viability of KRS § 411.320, which insulates manufacturers from liability where their products are altered. When confronted *squarely* with the question whether Kentucky's comparative fault statute supersedes § 411.320, the Kentucky state courts have said "yes." Facing the question again, they would likely do the same. The defendant manufacturers' request for a jury instruction in reliance on § 411.320(1) and (2) is thus denied.

### BACKGROUND

When Rob Low brought home his new Rexon miter saw in April 2007, he almost immediately noticed that it hung up when he lowered it into the cutting position. R. 1, Attach. 4 at 2; R. 46, Ex. F at 176. Over time, the sticking grew worse**.** R. 46, Ex. J at 12; Ex. I at 15. Low and his friends also noticed on occasion that the blade guard stuck open when the saw returned to its resting position. R. 46, Ex. F. at 191-92; Ex. J at 19; Ex. I at 11-12. A year after

he bought it, a piece of wood Low was cutting snapped and threw his hand across the spinning saw blade. *Id.* Ex. F at 103-04. Unfortunately, this was allegedly another instance in which the blade guard improperly stuck open, and Low was seriously injured. *Id.* at 99-100.

The blade guard purportedly stuck open because the link that attached the guard to the saw was bound and bent. R. 46, Ex. K at 3. The same broken linkage was also assertedly the cause of the hang up Low and his friends noticed from their very first use of the saw. *Id.*

When the defendants' engineering expert reviewed the saw he says he noticed "evidence of physical abuse." R. 46, Ex. M at 3. He noted "wear marks," "tool marks," and a "missing rear lift handle." *Id.* Relying on this opinion, the defendants plan to ask the Court for an as-yet unwritten jury instruction based on § 411.320(1) and (2). R. 69. Subsection (1) insulates manufacturers from liability for injuries resulting from products not in their "original, unaltered and unmodified condition." And subsection (2) similarly insulates manufacturers "if the plaintiff performed an unauthorized alteration or an unauthorized modification" to the offending product so long as the change "was a substantial cause of the occurrence that caused injury." Low objects.

## DISCUSSION

Neither subsection (1) nor (2) of § 411.320 remains good law, so Low's objection is sustained. Concerning subsection (1), the Kentucky Supreme Court expressly held that the later-passed comparative fault statute, KRS § 411.182, supersedes it. *Caterpillar, Inc. v. Brock*, 915 S.W.2d 751, 753 (Ky. 1996). The *Caterpillar* court explained that the comparative fault statute straightforwardly means that "fault is to be apportioned among all parties to each claim" in "all

2

tort actions, including products liability actions[.]" *Id.* And, it continued, this "is adverse to the purpose of [KRS § 411.320(1)] to such an extent that the apportionment statute negates [KRS § 411.320(1).]" *Id.* What's more, Kentucky state courts have repeatedly cited *Caterpillar* with approval, and so the Court is confident in applying it to this case. *Owens Corning Fiberglas Corp. v. Parrish*, 58 S.W.3d 467, 474 n.18 (Ky. 2001); *DeStock No. 14, Inc. v. Logsdon*, 993 S.W.2d 952, 958 (Ky. 1999)[1]; *Leslie v. Cincinnati Sub-Zero Prods., Inc.*, 961 S.W.2d 799, 804 (Ky. Ct. App. 1998).

Asked directly whether § 411.320(2) survived passage of the comparative fault statute, the Kentucky Supreme Court, which has not squarely addressed the question, would also say "no." *See Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577 (6th Cir. 2004) (holding that, where a state's supreme court has not ruled on a particular issue, federal courts should predict how the supreme court would rule). As another court has recognized, subsection (2) is not materially different from subsection (1). *Smith v. Louis Berkman Co.*, 894 F. Supp. 1084, 1090 (W.D. Ky. 1995). It simply protects manufacturers from plaintiffs who "perform[] an unauthorized alteration or an unauthorized modification," *id.* at 1089 n.3, just as subsection (1) more sweepingly protects manufacturers where the offending product is not in its "unaltered and unmodified condition." *See id.* at 1091 ("The result is the same under KRS 411.320(1), which

---

[1] The *DeStock* court did incorrectly characterize *Caterpillar* as invalidating § 411.320(3), rather than (1). 993 S.W.2d at 958; *see also Jarrett v. Duro-Med Indus.*, No. 05-102, 2007 WL 628146, at *3 (E.D. Ky. Feb. 26, 2007). But the distinction between subsections (1) and (3) did not matter in *DeStock*. The case was not actually about § 411.320. Rather, the Court was simply summarizing the holding in *Caterpillar* for the general proposition that a later statute may impliedly repeal an earlier statute if the two are irreconcilable. *Id.* at 958-59. Hence, this slip-up cannot be read as reviving subsection (1) by reconstruing the holding in *Caterpillar*.

3

mirrors 411.320(2) but applies more broadly to alterations to the product made by any person or entity."). In fact, subsection (2) is nothing more than a middle ground between subsection (1) and subsection (3): At one end of the spectrum, subsection (1) protects manufacturers where *anyone* has altered the product. At the other end, subsection (3)—which is also superseded by the comparative fault statute, *Owens Corning*, 58 S.W.3d at 474—protects manufacturers where the plaintiff has *himself* been *negligent* in using the product. In between is subsection (2), which protects manufacturers where the plaintiff has himself *altered* the product. Thus, viewing subsection (2) as nothing but the intersection of (1) and (3), the Kentucky Supreme Court's expressly invalidating (1) and (3) surely means (2) is gone as well. *See Jarrett*, 2007 WL 628146, at *4 n.2 ("[A]t least one commentator has opined that, because KRS § 411.320(1) and (3) have been invalidated by the Kentucky Supreme Court and KRS § 411.320(2) shares the same rationale as those subparts, KRS § 411.320(2) should 'suffer the same fate if challenged.'" (quoting 13 David J. Liebson, *Ky. Prac. Tort Law* § 10.57 (2006)).

Even looking at subsection (2) in isolation, it is hard to reconcile with the comparative fault statute. That statute says that in "all tort actions, including products liability actions, involving fault of more than one (1) party to the action," the jury should decide the "percentage of the total fault of all the parties to each claim." KRS § 411.182(1)(b). Thus, "[w]hen both the plaintiff's modification and the defendant's actions played a substantial role in causing the plaintiff's injury, the comparative fault doctrine demands that fault and thus damages be apportioned among the tortfeasors." *Smith*, 894 F. Supp. at 1090-91. And yet if the plaintiff makes *any* modification to the product, no matter "whether [he] was at fault or the product was

4

defective," the earlier-enacted § 411.320(2) purports to forbid apportioning fault. *Id.* The conflict could hardly be clearer.

The defendants respond first that subsection (2) is reconcilable with the comparative fault statute because it is not about apportioning fault at all, but about the doctrine of superseding cause. Although the Kentucky Supreme Court did seem to place this gloss on subsection (2) in *Monsanto Co. v. Reed*, 950 S.W.2d 811, 814 (Ky. 1997), it is a strange way to frame subsection (2). A superseding or intervening cause of the kind that can break the chain of causation is usually a "highly extraordinary," unforeseeable event caused by some third party. *See Montgomery Elevator Co. v. McCullough*, 676 S.W.2d 776, 780 (Ky. 1984); *NKC Hospitals, Inc. v. Anthony*, 849 S.W.2d 564, 568 (Ky. Ct. App. 1993). Yet KRS § 411.320(2) goes far beyond that, protecting manufacturers where the plaintiff performs "an unauthorized alteration or an unauthorized modification"—apparently including "failure to observe *routine* care and maintenance," KRS § 411.320(1)(emphasis added). But, regardless, the *Monsanto* court also described the very similar subsection (1) in terms of superseding cause (in fact, it described the entirety of § 411.320 in that way), *Monsanto*, 950 S.W.2d at 814. And yet the Kentucky Supreme Court still held that the comparative fault statute superseded it in *Caterpillar*.

Finally, the defendants incorrectly argue that the Court must enforce subsection (2) because the Kentucky Supreme Court did so in *Monsanto*, handed down a year after *Caterpillar* and cited by some federal district courts choosing to enforce subsection (2). *See, e.g.*, *Wells v. Portman Equip. Co.*, No. 5:05-183, 2007 WL 438243, at *1-2. (E.D. Ky. Feb. 7, 2007). Yes, the *Monsanto* court enforced subsection (2). It apparently also enforced subsection (1). 950

S.W.2d at 814. But the *Monsanto* court did not directly address whether the comparative fault statute overruled subsection (2) (or subsection (1), for that matter). In fact, the *Monsanto* court did not even acknowledge the recent holding in *Caterpillar*. *Id.*; *Jarrett*, 2007 WL 628146, at *3. Federal courts confronting such conflicting state supreme court precedents—particularly where the later decision did not directly consider the particular question at issue—are not bound to follow the most recent decision if confident that the state supreme court would not follow it either. *Meredith v. City of Winter Haven*, 320 U.S. 228, 234 (1943); *see also W.A. Wright, Inc. v. KDI Sylvan Pools, Inc.*, 746 F.2d 215, 218 (3d Cir. 1984); 8 Fed. Proc., L. Ed. § 20:623 (2011). Because Kentucky courts have reaffirmed *Caterpillar* since *Monsanto*, *see Owens*, *DeStock*, and *Leslie*, *supra*, and because subsection (2) is not materially distinguishable from subsection (1), the Court is confident that the Kentucky Supreme Court would strike down subsection (2). *See Kentland Coal & Coke Co. v. Keen*, 183 S.W. 247, 250-51 (Ky. 1916) (holding that where recent decisions "unintentionally departed" from earlier established law, stare decisis does not require the court to follow the later holdings).

It is **ORDERED** that the plaintiffs' objection, R. 74, to the proposed jury instruction is sustained.

This the 22nd day of March, 2011.

Signed By:
*Amul R. Thapar* AT
United States District Judge